IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT D. ARMSTRONG, *formerly known as Robert D. Swann*, and JOHN D. ARMSTRONG, *formerly known as John D. Swann*, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No.     3:08-0974 |
| SYMETRA LIFE INSURANCE CO., *formerly known as Safeco Life Insurance Co.*, AETNA CASUALTY & SURETY CO., ST. PAUL TRAVELERS CASUALTY & SURETY CO., STRUCTURED BENEFITS OF FLORIDA, and PACIFIC LIFE INSURANCE CO. ) ) ) ) ) ) ) ) | Judge Nixon
Magistrate Judge Griffin |
| Defendants. ) | |

## ORDER

Pending before the Court is Defendants Symetra Life Insurance Co., et al.'s ("Defendants") Motion for Summary Judgment ("Defendants' Motion") (Doc. No. 30), accompanying Memorandum (Doc. No. 31) and Statement of Undisputed Material Facts (Doc. No. 32). Plaintiffs Robert D. Armstrong and John D. Armstrong ("Plaintiffs"), in turn, have filed a Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 38) and a Response to Defendants' Motion (Doc. No. 39). For the reasons set forth below, Defendants' Motion is hereby **DENIED**.

1

I.  **BACKGROUND**

   A.  **Factual Background**

      *1.  1990 Settlement*

In July 1989, Jamie Armstrong Swann, the natural mother of Plaintiffs, had an incident at a restaurant where she choked, fell into a coma and later died. (Aff. of Robert D. Armstrong, Doc. No. 38, Attach. 1, at 1). Around January 1990, Plaintiffs Robert and John Armstrong (formerly known as Robert and John Swann), still minors, began living with their uncle and aunt, Bob and Beverly Armstrong. In July 1990, the Court appointed Jean N. Armstrong, Jamie Swann's mother, as the guardian for the Plaintiffs. Thereafter, James Armstrong (Jamie Swann's father and conservator) and Jean Armstrong (on behalf of Plaintiffs) brought a personal injury claim against the restaurants. As the result of the suit, the parties reached a Settlement Agreement (Doc. No. 32, Ex. MSJ-5), with the following relevant stipulations:

> 2.  The Released Parties hereby agree to pay the following sums in cash to the Releasing Parties and/or their attorneys:
>
> a)  Robert D. Swann . . . ; periodic payments made payable to Jean N. Armstrong as guardian for Robert D. Swann, beginning September 1, 1990, $350.00 monthly for eight (8) years, then $900.00 monthly for four (4) years with guaranteed lump sum payments of $15,000.00 on September 1, 1998 and $20,000 on September 1, 2002.
>
> b)  John D. Swann . . . ; and periodic payments made payable to Jean N. Armstrong as guardian for John D. Swann, beginning September 1, 1990, $350.00 monthly for twelve (12) years, then $900.00 monthly for four (4) years with guaranteed lump sum payments of $15,000.00 on September 1, 2002 and $25,000.00 on September 1, 2006.
>
> . . .
>
> 3.  It is understood and agreed that the Aetna Casualty and Surety Company may arrange the payment of some or all of the payments to Robert D.

2

Swann as set forth in paragraph 2(a) of this agreement by the purchase of annuity contracts from Safeco Life Insurance Company . . .

4. It is understood and agreed that the Travelers Insurance Company may arrange the payment of some or all of the payments to John D. Swann as set forth in paragraph 2(b) of this agreement by the purchase of annuity contracts from Confederation Life Insurance Company . . .

(*Id.* at 2-3).

### 2. *Aetna/Safeco/Symetra Annuity for the Benefit of Robert Armstrong*

On July 19, 1990, Aetna Casualty and Surety Company ("Aetna") entered into a contract with Safeco Life Insurance Company (later known as Symetra Life Insurance Company) ("Safeco/Symetra") in accordance with the Settlement Agreement, under which Safeco agreed to make payments pursuant to the annuity contract for the benefit of Robert D. Swann. The annuitant is listed as "Robert Derrick Swann," and payments were to be made "PAYABLE TO: Jean N. Armstrong, as guardian for Robert Derrick Swann, a minor." (Safeco Annuity, Doc. No. 32, Ex. MSJ-8). On February 9, 1994, Bob and Beverly Armstrong adopted Robert D. Swann. (Final Decree of Adoption, Doc. No. 32, Ex. MSJ-2).

Safeco/Symetra made all payments under the annuity—payments made prior to March 1, 1997 were made to and as directed by Jean Armstrong, and payments made after March 1, 1997 were made to and as directed by Beverly Armstrong. (Aff. of Kim McSheridan, Doc. No. 32, Ex. MSJ-14).

When Robert D. Armstrong reached majority on April 11, 1998, Safeco/Symetra continued to send funds as directed by Beverly Armstrong. (*Id.*). Robert states he never received any payments from the 1990 Settlement nor did he receive any payments after he reached the age of majority. (Compl., Doc. No. 1, Ex. 1, at 3). In February 2008, Robert wrote Bob and Beverly

3

Armstrong about these funds and they wrote back, stating that there was no money for him to receive, thereby concealing its existence. (*Id.* at 3).

### 3. *Travelers/Confederation/Pacific Life Annuity for the Benefit of John Armstrong*

On August 21, 1990, Travelers Indemnity ("Travelers") entered into a contract with Confederation Life Insurance Company ("Confederation"), under which Confederation agreed to make payments pursuant to the annuity contract for the benefit of John D. Swann.

On February 9, 1994, Bob and Beverly Armstrong adopted John D. Swann. (Final Decree of Adoption, Doc. No. 32, Ex. MSJ-2). After adoption, Beverly Armstrong sent Confederation a letter informing Confederation of the adoption accompanied by an adoption decree, and directing Confederation to make payments to one Farmers Bank account in Bob and Beverly Armstrong's name. (Beverly Armstrong Correspondence, Doc. No. 32, Ex. MSJ-11).

In or around 1999, Pacific Life assumed the Confederation annuity contract. (Assumption Certificate and Exchange Endorsement, Doc. No. 32, Ex. MSJ-12). Confederation, later Pacific Life, made all payments required under the annuity—payments made prior to the adoption were made to and as directed by Jean Armstrong, and payments after the adoption were made to and as directed by Beverly Armstrong. (Pacific Life Payment Records, Doc. No. 32, Ex. MSJ-13).

When John D. Armstrong reached the age of majority April 18, 2002, Pacific Life continued to send funds as directed by Beverly Armstrong. (*Id.*). In or around July 2004, Pacific Life received a directive dated July 12, 2004 to continue making deposits under the contract to the Farmer's Bank Account. This document is purported to be signed by John D. Swann

4

Armstrong. Mr. Armstrong declares the signature to be a forgery. (Compl., Doc. No. 1, Ex. 1, at 4), and states that he never received any payments from the 1990 Settlement nor did he receive any payments after they reached the age of majority. (*Id.*).

### B. Procedural Background

Plaintiffs brought an action against Symetra Life, Aetna, Travelers, and Pacific Life for misappropriation of funds and breach of contract in Tennessee State Court. (Doc. No. 1, Ex. A). In October 2008, Defendants removed the case to federal court. (Doc. No. 1). On February 6, 2009, Defendants filed a Motion for Summary Judgment (Doc. No. 30), and on March 17, 2009, Plaintiffs filed a perfunctory Response in Opposition to Defendants' Motion (Doc. No. 39).[1]

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

Mere allegations of a factual dispute between the parties are not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact.

---

[1] In a November 13, 2008 Court Order, Plaintiffs' counsel agreed that Symetra did not issue an annuity for John D. Armstrong, and that Pacific Life did not issue an annuity for Robert D. Armstrong. (Doc. No. 27). Any claims by John D. Armstrong against Symetra are therefore DISMISSED. Likewise, any claims by Robert D. Armstrong against Pacific Life are also DISMISSED.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding in favor of the non-moving party. *Id.* The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.,* at 248.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson*, 477 U.S. at 250. The court must determine whether a reasonable jury would be able to return a verdict for the non-moving party and if so, the Court must deny summary judgment. *Id.,* at 249. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

Case 3:08-cv-00974 Document 46 Filed 04/08/10 Page 6 of 13 PageID #: 442

III. ANALYSIS

Defendants raise several arguments in favor of their Motion. Defendants argue: (1) Defendants performed as required by the Contract and the Court Order; (2) assuming that Defendants followed the terms of the Contract and Court Order, Plaintiffs are estopped from collaterally attacking the terms of the settlement; and (3) Plaintiffs' action is barred by the statute of limitations.

A.   **Performance of Contract and Court Order**

Defendants argue that they performed as required by the Contract and the Court Order, as both the Symetra Life annuity and the Pacific Life annuity (collectively, the "Annuities") were paid as established, and Plaintiffs have raised no genuine factual dispute to the contrary. According to Defendants, the Settlement dictated that the funds resulting from the Annuities were to go to the guardian of John and Robert Armstrong, and never the Plaintiffs individually, even after they attained majority. Defendants reason that had the Settlement intended to provide John and Robert Armstrong with the funds directly upon their obtaining majority, it would have explicitly so stated. (Doc. No. 30, at 5). Furthermore, the adoption of John and Robert Armstrong by Beverly and Bob Armstrong terminated any existing guardianship orders with any other party. (Doc. No. 30, at 4 (citing Tenn. Code Ann. § 36-1-121(a)). In response, Plaintiffs state only that Jean Armstrong was named specifically to be the recipient of the funds. (Doc. No. 39, at 2).

The question of performance turns on whether, when funds are designated to go to an individual "as guardian" for another, and legal guardianship changes or terminates, the payee also changes. Here, guardianship changed after Plaintiffs' adoption by Bob and Beverly Armstrong,

7

and was later terminated upon Plaintiffs' attainment of majority. Parties did not put forward any cases that spoke directly to this issue, and the Court, too, was unable to find any case that spoke directly to this situation.

"[I]t is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust." *Petty v. Sloan*, 197 Tenn. 630, 639-40 (Tenn. 1955) (quoting *Smithart v. John Hancock Mut. Life Ins. Co.*, 167 Tenn. 513, 525 (Tenn. 1934). Settlements and Court Orders are analyzed as contracts. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. Mich. 1998). When interpreting contracts, "words must be construed in accordance with their usual and ordinary meaning." *Pierce v. Pierce*, 2008 Tenn. App. LEXIS 365 (Tenn. Ct. App. 2008) (citing *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986)). "[T]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles. In getting at this intention we . . . do not determine what the state of the mind was of the parties at the time the contract was executed but rather what their intention was as actually embodied and expressed in the instrument as written." *Petty*, 197 Tenn. at 642 (citations omitted).

As both parties acknowledge, the payments indicate they were to come to "Mrs. Armstrong (Jean) *as guardian*" for Plaintiffs. (Doc. No. 32, Ex. MSJ-5, at 2-3) (emphasis added). The plain meaning of the text indicates that payments were to be made to Jean Armstrong only in her capacity as guardian. It is also clear from the text of the 1990 Court Order that Plaintiffs are the intended beneficiaries of the Settlement. In an annuity where money is paid to a recipient as a guardian of the funds on behalf of a minor, the former guardian is no longer the

8

proper recipient of the annuity funds upon termination of the guardianship.

Under Tennessee law, "The signing of a final order of adoption terminates any existing guardianship orders," and the adoptive parents assume all legal consequences as if they were the natural parents of the children. Tenn. Code Ann. § 36-1-121(a). The effect of the February 9, 1994 adoption of Plaintiffs by Bob and Beverly Armstrong was the change the guardianship of Plaintiffs' Annuities funds. Upon Bob and Beverly Armstrong's adoption of Plaintiffs, their guardianship replaced and terminated the guardianship of Court-appointed guardian Jean Armstrong. Thus, while Jean Armstrong was the proper recipient of the funds as guardian for Plaintiffs until the date of adoption, upon adoption, the funds were to go to Bob and Beverly Armstrong as guardians of Robert and John.

Under operation of Tennessee law, unless a court has previously determined an individual is disabled, legal guardianship terminates when a minor reaches eighteen (18) years of age. Tenn. Code Ann. § 34-2-106. Like Jean Armstrong, Bob and Beverly Armstrong's role as the trustee of the annuity funds only existed insofar as they served as guardians for Plaintiffs. When their guardianship terminated, their role as trustee of the settlement funds also terminated. Thus, any funds designated to such guardians in their capacity as guardians should be designated to the beneficiaries directly upon the beneficiaries' attainment of majority. Defendants fail to assert that guardianship is treated differently in the case of annuities, and the Court has not found any proof that this is so.

Robert D. Armstrong reached majority on April 11, 1998. John D. Armstrong reached the age of majority April 18, 2002. Consequently, while Defendants rightly sent the money to Plaintiffs' guardians before these respective dates, they were obligated to send the funds directly

to Plaintiffs upon the termination of guardianship, i.e., each plaintiff's eighteenth birthday. Failure to do so may constitute a breach of contract.

It may be argued that the July 2004 directive to Pacific Life that deposits should continue to be made to the Farmer's Bank Account served as an intervening, superceding cause, or ratification of the payments. This argument was raised in Defendants' Answer and is a question of both law and fact. Neither party has briefed on this issue in the Motion for Summary Judgment. The Court therefore declines to rule on this issue.

For the foregoing reasons, Defendants' Motion for Summary Judgment on the grounds of performance is hereby DENIED.

### B. Collateral Estoppel

Defendants also move for summary judgment on the ground that, assuming that Defendants followed the terms of the Contract and Court Order, Plaintiffs are estopped from collaterally attacking the terms of the Settlement, as Jean Armstrong served as Plaintiffs' guardian during the settlement negotiations, and a ward is bound by the acts of his guardian within the scope of the guardianship. (Doc. No. 30, at 5 (citing *Wilson v. Schafer*, 107 Tenn. 300, 334 (1901)).

As explained in the previous section, Defendants did not follow the terms of the Contract and Court Order. Thus, while Plaintiffs may be estopped from collaterally attacking the terms of the settlement, their suit was brought to enforce the terms of the settlement. Thus, Defendant's Motion for Summary Judgment on this ground is DENIED.

10

## C. Statute of Limitations

Defendants state that the action is barred by the statute of limitations. (Doc. No. 30, at 6). Plaintiffs state in their Response that the cause of action is a breach of contract claim. The statute of limitations for a contract action in the state of Tennessee is six years. Tenn. Code Ann. § 28-3-109(a)(3) (2010). For claims of breach of contract, the statute of limitations generally begins to run on the date of the breach. *Goot v. Metro. Gov't of Nashville & Davidson County*, 2005 Tenn. App. LEXIS 708, 2005 WL 3031638 at *11 (Tenn. Ct. App. Nov. 9, 2005) (quoting *Greene v. THGC, Inc.*, 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995)). In installment contracts, each failure to pay an installment gives rise to a separate breach. *Id.* (citing *Farmers & Merchants Bank v. Templeton*, 646 S.W.2d 920 (Tenn. App. 1982) (citing *Barnes Bros. v. Coal Co.*, 101 Tenn. 354, 47 S.W. 498 (1898))).

Plaintiffs filed this suit on August 29, 2008. If breach is proven, Defendants may have breached the contract each time they failed to send the funds directly to adult Plaintiffs. Robert D. Armstrong reached majority on April 11, 1998, and John D. Armstrong reached the age of majority on April 18, 2002. Thus, any payment wrongfully sent to Bob and Beverly Armstrong after August 29, 2002 is not time-barred. Robert D. Armstrong was due a lump sum payment of $20,000 on September 1, 2002. John D. Armstrong was due a lump sum payment of $15,000 on September 1, 2002; forty-eight monthly payments of $900.00 each, beginning September 1, 2002; and a lump sum payment of $25,000 on September 1, 2006.

Plaintiffs disavow knowledge of the payments resulting from the Settlement until February 2008. (Compl., Doc. No. 1, Ex. 1, at 3). The Court construes this as an attempt to invoke the discovery rule to toll the statute of limitations until February 2008. "Many courts now

11

apply the discovery rule to breach of contract claims and hold that a cause of action for breach of contract begins to run when a party either discovers the breach or could have or should have discovered the breach through the exercise of reasonable judgment." *Goot*, 2005 Tenn. App. LEXIS 708 at *39. The statute is tolled only during that period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry. *Taylor v. Metro. Gov't of Nashville & Davidson County*, 2008 Tenn. App. LEXIS 747, 20-21 (Tenn. Ct. App. Dec. 19, 2008) (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 656-57 (Tenn. 1994).

It is a genuine issue of material fact whether Plaintiffs knew or should have known about the annuity payments due to them. Individuals under disability at the time of a judicial proceeding to which they are parties, represented by their guardian and agents, are generally bound by the knowledge of such guardians and agents. *Winchester v. Winchester*, 38 Tenn. (1 Head) 460 (1858); 18 Tenn. Juris., Minors § 23 n.8. However, this is only the rule "in the absence of all fraud and collusion." *Winchester*, 38 Tenn. at 487. Plaintiffs suggest that their guardians concealed the settlement's existence from them at the time of their attainment of majority. (Compl., Doc. No. 1, Ex. 1, at 3). The existence of such concealment is a disputed question of fact, and thus proper invocation of the discovery rule cannot be resolved in a motion for summary judgment.

Defendants' Motion for Summary Judgment on these grounds is therefore DENIED.

IV.  CONCLUSION

Defendants failed to demonstrate the absence of a genuine issue of material fact regarding any of Plaintiffs' claims in the instant matter. For the reasons set forth above, the Court **DENIES** Defendant's Motion for Summary Judgment. (Doc. No. 30).

It is so ORDERED.

Entered this the ___1st___ day of April, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

13